Glenn R. PARRILLO

v.

Lori H. PARRILLO.

83–68–Appeal.

Supreme Court of Rhode Island.

July 11, 1985.

Robert M. Brennan (Brennan & Kenney), Providence, for plaintiff.

Bruce E. Vealey/Alan T. Dworkin, Cranston, for defendant.

## OPINION

SHEA, Justice.

In this case, which involves the issue of child custody, the father appeals from an order entered in the Family Court that denied his motion to modify the terms of a final divorce decree awarding custody to the mother. We affirm.

On November 3, 1978, a final divorce decree was entered by the Family Court dissolving the marriage between Lori H. Parrillo (the mother) and Glenn R. Parrillo (the father). The decree awarded the mother physical custody of the parties' twin sons, Jacob and Joshua, born on September 18, 1977, and awarded the father visitation rights with the children on each Sunday afternoon, on Christmas, on Thanksgiving, and on the children's birthday.

After the entry of the final decree, the parties, by informal agreement, expanded the father's visitation rights to include the entire weekend and several days during the week. From April 25, 1981, until May 1, 1981, the father and his parents, with whom he lived, cared for the children on a full-time basis while the mother was hospitalized for an operation.

On May 13, 1981, the father filed a petition for a change of custody, alleging that the mother "continually has unrelated male friends at her apartment * * * [who] have spent the entire night" and that she leaves the children "unattended for long periods of time which has resulted in the children sustaining injuries which necessitated medical treatment." On May 14, 1981, the Family Court issued an ex parte order granting his petition and awarding him physical custody of the children. On June 4, 1981, the Family Court denied the mother's oral motion to vacate the ex parte order. On July 27, 1981, the Family Court again denied her motion to vacate the order, reaffirmed the original ex parte order, and awarded her visitation "each and every Tuesday and Thursday from the hours of 2:00 p.m. to 6:00 p.m., and additionally * * each and every Friday from 4:00 p.m. to Saturday at 4:00 p.m."

On November 18 and November 20, 1981, hearings on the ex parte order were held in Family Court. Extensive testimony was taken from the paternal grandmother, the father, several of his relatives, the mother's psychotherapist, and two social workers.

Prior to these hearings, the trial justice had received a letter from the maternal grandmother in which she both complained about the length of time that had elapsed since the issuance of the ex parte order and alluded to a meeting she had had with the trial justice. The father contended that this letter destroyed the trial justice's ability to hear the case impartially. The trial justice denied the father's motion to pass the case and declined to recuse himself.

In an order entered on March 24, 1982, the trial justice returned custody of the children to the mother but awarded physical possession of the children to the father from Sunday evening to Friday afternoon "so long as he resides in the home of his parents." The mother was awarded visitation rights on Tuesday and Thursday afternoons and each weekend from Friday afternoon until Sunday evening. The order further specified that "this matter is continued until June 21, 1982 for review."

On June 21, 1982, a consent decree "by agreement of all the parties" was entered that continued the arrangement provided for in the order of March 24 and was "designed to give [the mother] an opportunity to stabilize herself and to obtain employment and her own home or apartment and to become more self-sufficient and self-reliant and to restructure things for herself." Review was scheduled for June 21, 1982, "to see if the plan [was] working." [1]

At the scheduled review the trial justice, after hearing testimony from the mother, the maternal grandmother, the father, and the paternal grandmother, determined that there was not a "scintilla of evidence that men spent the entire night with [the mother]" and that "a lot of allegations in [the father's petition] * * * have not been proven." In addition, he denied the father's motions for the appointment of a guardian ad litem to represent the interests of the children and for a mental examination of the mother.

In his decision rendered on June 22, 1982, the trial justice returned physical possession of the children to the mother. In the decision, he noted that

"there's nothing * * * in any shape or manner that proves the allegations in the petition upon [which] the ex parte order was based. Mrs. Parrillo [mother] is now off welfare. She's working. She's living with her mother. She's in a more stable circumstance."

■ Although the trial justice's order was not entered until July 29, 1982, the father filed a notice of appeal to this court on July 14, 1982.[2]

The father contends on appeal that the trial justice erred in denying his motion to pass and in refusing to recuse himself from hearing the case since he was prejudiced by the letter from the maternal grandmother and because the meeting between the trial justice and the grandmother violated Sup. Ct.R. 48, Canon 15.[3]

■ It is well established that a party claiming judicial prejudice must

"establish affirmatively that the trial justice had personal bias or prejudice by reason of a preconceived or settled opinion of a character calculated to impair his impartiality seriously and to sway his judgment." *Cavanagh v. Cavanagh*, 118 R.I. 608, 621, 375 A.2d 911, 917 (1977).

Moreover, this court has stated that

"[b]efore a judge is required to recuse in order to avoid the appearance of impropriety, facts must be elicited indicating that it is reasonable for members of the public or a litigant or counsel to question the trial justice's impartiality." *State v. Clark*, —— R.I. ——, ——, 423 A.2d 1151, 1158 (1980).

No one disputes that the trial justice received the letter from the grandmother

---

1. The record indicates that the scheduled review was held on the same day that the consent decree was entered.

2. Under the provisions of Sup.Ct.R. 4(a), the notice of appeal shall be filed "within twenty (20) days of the date of *entry* of * * * order * * appealed from." (Emphasis added.) A strict construction of Rule 4(a) would require the present appeal to be dismissed as premature. However, since so much time has elapsed, this court will not regard this procedural defect as

fatal and will treat the appeal as if it had been timely filed after the entry of judgment. *See* *Russell v. Kalian*, —— R.I. ——, ——, 414 A.2d 462, 464 (1980).

3. The canons of judicial ethics, Sup.Ct.R. 48, Canon 15 provides in pertinent part: "[a] judge should not permit private interviews, arguments or communications designed to influence his judicial action."

and that he met with her to discuss her complaints about the delay in scheduling a hearing on the ex parte order. However, there is nothing in the record to suggest that he participated in any discussions on the merits of the case. This court has noted that "[s]uch conferences on housekeeping items show neither a prejudicial state of mind nor a denial of a fair hearing" and do not constitute a violation of Canon 15. *Cavanagh v. Cavanagh*, 118 R.I. at 623, 375 A.2d at 918.

■ Since the father has neither established any personal bias or prejudice on the part of the trial justice nor elicited facts to show that any of his actions raised reasonable questions about his impartiality, we conclude that the trial justice did not err in declining to recuse himself.

The father also contends that the trial justice failed to take into account the evidence regarding the best interests of the children during the trial and in rendering his decision.

■ Absent an abuse of discretion, we will not disturb the trial justice's decision refusing to modify a decree giving a party permanent custody. *See Veach v. Veach*, —— R.I. ——, ——, 463 A.2d 508, 510 (1983). Such an abuse of discretion will not be found unless there are sufficiently altered conditions and circumstances or other reasons necessitating the modification in the interest of the children's welfare. *Id.* Moreover, the party requesting the modification has the burden "to show by a preponderance of the evidence that such a change in the custody is necessary in the interest of the children's welfare." *Chatelain v. Chatelain*, 93 R.I. 136, 139–40, 172 A.2d 332, 333 (1961).

■ Our review of the record satisfies us that the father has failed to demonstrate sufficiently altered conditions and circumstances that would warrant a modification of the decree giving the mother permanent custody. The record contains no credible evidence to indicate that the mother's ability to care for the children had changed since the entry of the final divorce decree. Since the father failed to sustain his burden, the trial justice did not abuse his discretion in finding that the mother should retain custody of the children.

The father further contends that the trial justice abused his discretion in failing to appoint a guardian ad litem to provide the court with information regarding the children's best interests.

■ It is well settled that the trial justice has the inherent power to appoint a guardian ad litem whenever it appears that there are interests of a minor to be protected. *Zinni v. Zinni*, 103 R.I. 417, 421, 238 A.2d 373, 376 (1968). The question before us, however, is whether the trial justice's failure to appoint a guardian ad litem was an abuse of discretion.

■ The father failed to show any valid basis for such an appointment. The record contains no objective evidence indicating any danger to the children. The testimony suggests that the children were "healthy and outgoing * * * normal three year olds," and the mother's psychotherapist testified that her parenting was not affected by her anxiety and depression. Therefore, we are satisfied that the trial justice's refusal to appoint a guardian ad litem was fully justified.

The father also argues that the trial justice abused his discretion in refusing to order a mental examination of the mother under the provisions of Rule 35 of the Rules of Procedure for Domestic Relations.[4]

In *DiRusso v. DiRusso*, 12 Mass.App. 892, 893, 422 N.E.2d 463, 464 (1981), the

---

4. Rule 35 of the Rules of Procedure for Domestic Relations (1984 Supp.) provides in pertinent part: "In an action in which the mental * * * condition * * * of a party * * * is in controversy, the court *may* order the party to submit to a * * * mental * * * examination by a physician." (Emphasis added.)

court held that it was not an abuse of the judge's discretion to refuse to order independent psychiatric evaluations of the parties in a situation in which he had had many opportunities during the "myriad proceedings" to see and hear those parties.

In this case, we believe that the trial justice's firsthand observation of the mother and the testimony of her psychotherapist provided him with a sufficient basis to refuse the request. Therefore, we conclude that there was no abuse of discretion in the refusal to order a mental examination.

Finally, the father contends that the trial justice's decision was erroneous in that it was inconsistent with his interim order directing the mother to "stabilize herself" and "get her life back on track." According to the father, she had not demonstrated that she had stabilized her life, and the trial justice's conclusion that she had done so was unfounded.

In his decision, the trial justice noted that the mother was "off welfare," "working," "living with her mother," and "in a more stable circumstance." Relying upon his observations of the mother and her testimony, he concluded that she had stabilized her life.

The findings of a trial justice in an award of custody are to be accorded great deference. *Cok v. Cok,* — R.I. —, —, 479 A.2d 1184, 1189 (1984). Inasmuch as the father has not established that the trial justice's findings were clearly wrong or that he overlooked or misconceived material evidence, *Engelhardt v. Bergeron,* 113 R.I. 50, 56, 317 A.2d 877, 881 (1974), we conclude that the trial justice correctly decided that no change in custody was warranted.

For these reasons, the appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of this case are remanded to the Family Court.